## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

PASQUALE STISO,

        **Petitioner,**

  **v.**

UNITED STATES OF AMERICA,

        **Respondent.**

Civ. No. 2:20-cv-10331 (WJM)


**OPINION**

### WILLIAM J. MARTINI, U.S.D.J.

Presently before the Court is *pro se* Petitioner Pasquale Stiso's ("Petitioner") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based on allegations that his former defense counsel, Henry E. Klingeman, Esq. and Ernesto Cerimele, Esq., provided constitutionally ineffective assistance of counsel at trial in his underlying criminal case (Crim No. 2:14-484-WJM-2). Pet., ECF No. 1. For the reasons set forth below, the Court will deny Petitioner's § 2255 motion and no certificate of appealability shall issue.

### I.    BACKGROUND

#### A. Petitioner's Criminal Conviction

The factual background of Petitioner's underlying criminal conviction has been recited at length in prior Opinions by both this Court and the United States Court of Appeals for the Third Circuit. *See, e.g., United States v. Stiso*, 771 F. App'x 512 (3d Cir. 2019) (affirming Petitioner's sentence); *United States v. Stiso*, 708 F. App'x 749 (3d Cir. 2017) (affirming Petitioner's conviction but vacating his sentence and remanding for resentencing); *United States v. Stiso*, Crim No. 14-484, 2016 WL 3566727 (D.N.J. June 30, 2016), *aff'd in part, vacated in part and remanded*, 708 F. App'x 749 (3d Cir. 2017). The Court therefore provides only a brief synopsis of the facts below.

In 2011, Petitioner and his friend Paul Mancuso defrauded five victims—Mark and Patricia Mezzancello, Ira Saferstein, and Robert and Richard Persico—in schemes where they promised to use the victims' funds to invest in real estate projects and to buy sports and concert tickets that could be resold for profit. The victims, however, did not recover on their investments because their money was not used to purchase tickets or real estate,

but was instead transferred, in part, to Petitioner's personal bank account and used for his personal expenses. In time, the FBI began to investigate Mancuso's fraudulent activities and obtained a warrant to wiretap Mancuso's telephone. Recorded telephone conversations between Mancuso and Petitioner revealed Petitioner's involvement with Mancuso's debts and the real estate and ticket schemes, with Petitioner declaring in calls with Mancuso, "I'm involved in these things, I'm involved [in] your decisions, I'm involved in everything that you decide that you do" and "[Y]ou don't realize how valuable . . . I am to this whole f***ing thing[.]" *See* Gov't Ex. J., Supp. App. 56, 65, ECF No. 13-3.

### B. Petitioner's Criminal Trial and Subsequent Appeals

On November 24, 2015, following a six-day trial, a jury convicted Petitioner of six counts of wire fraud, in violation of 18 U.S.C. § 1343 and § 2; three counts of money laundering, in violation of 18 U.S.C. § 1957 and § 2; and one count of conspiracy, in violation of 18 U.S.C. § 1349. After the jury's guilty verdict and prior to sentencing, Defendant renewed his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing the Government failed to proffer sufficient evidence at trial to support the jury's verdict on all ten counts. Petitioner also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33 predicated on alleged new information about Mancuso's status as a former confidential informant. The Court denied both motions, *see Stiso*, 2016 WL 3566727, and sentenced Petitioner on June 28, 2016, to forty-three months of imprisonment and three years of supervised release.

Petitioner then appealed his conviction and sentence to the Third Circuit, arguing that this Court erred in denying his motion for acquittal, in denying a motion to suppress the fruits of a wiretap warrant, in failing to recognize eleven instances of prosecutorial misconduct, and in applying the 2012 version of the sentencing guidelines, rather than the 2015 version. *See Stiso*, 708 Fed. App'x 749 at 751. The Third Circuit affirmed his conviction, but vacated his sentence and remanded the matter for resentencing consistent with the 2015 version of the sentencing guidelines. *Id.* at 763.

At the resentencing hearing on December 12, 2017, the Court sentenced Petitioner to forty-one months of imprisonment and three years of supervised release. Petitioner again appealed to the Third Circuit, arguing the sentence was procedurally and substantively unreasonable. *See Stiso*, 771 Fed. App'x at 513. Finding no error, the Third Circuit affirmed the sentence on May 16, 2019. *Id.* Petitioner did not petition for certiorari from the United States Supreme Court.

On or about August 16, 2019, Petitioner completed his prison sentence and was released from the Bureau of Prisons' custody to begin serving his three-year term of supervised release. Petitioner has completed nearly two years of his three-year term.

### C. Petitioner's Present 28 U.S.C. § 2255 Motion

2

On August 6, 2020, Petitioner filed the present § 2255 motion challenging his 2015 conviction and sentence on the grounds that his former defense attorneys, Henry E. Klingeman, Esq. and Ernesto Cerimele, Esq. (together, "defense counsel"), provided constitutionally ineffective assistance of counsel at his criminal trial. Pet., ECF No. 1. Specifically, Petitioner alleges he was denied his Sixth Amendment right to effective assistance when defense counsel: (1) failed to object, on the grounds of hearsay, to the admission into evidence of a notebook seized during a search of Petitioner's home; and (2) failed to call at trial John O'Donnell, Esq., a purportedly material witness who served as the escrow agent for some of Petitioner's and Mancuso's victims. Pet. at 1-2, ECF No. 1-1. Petitioner later supplemented his motion by filing the transcript of O'Donnell's New Jersey Office of Attorney Ethics interview, which Petitioner asserts supports his argument that O'Donnell was a material witness for the defense.[1]  ECF No. 9.

After interviewing defense counsel, the Government responded to Petitioner's initial motion and rejected each argument. Gov't Br., ECF No. 13. Petitioner filed a reply. Pet'r Reply, ECF No. 18. The motion is now fully briefed and ripe for resolution.[2]

## II.      DISCUSSION

### A.  Standard of Review Under 28 U.S.C. § 2255

A prisoner in federal custody may "move the court which imposed [his] sentence to vacate, set aside or correct the sentence" if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A petitioner is only entitled to habeas corpus relief under limited circumstances," and "must establish that the sentence suffers from 'a fundamental defect' causing 'a complete miscarriage of justice' or 'an

---

[1] On July 31, 2017, Petitioner filed an ethics grievance against O'Donnell with the Office of Attorney Ethics ("OAE") of the Supreme Court of New Jersey, alleging misuse of an escrow account, aiding and abetting fraudulent conduct, making false representations to perpetuate a client's fraudulent conduct, and withholding exculpatory evidence. Pet'r Ex. O, ECF No. 1-2. The interview transcript that Plaintiff provides the Court is the result of that grievance. On May 21, 2020, the OAE initiated a formal complaint charging O'Donnell with several violations of the Rules of Professional Conduct for, among other things, failing to properly maintain his trust account and failing to provide certain written disclosures or obtain informed consent from his clients (including from Mancuso and victims Robert and Richard Persico) concerning his representation. Pet'r Ex. P, ECF No. 1-2. The Court has considered Petitioner's supplemental submission, including the interview transcript, but does not rely on it in its analysis of Petitioner's present motion, as many of the supplemental arguments and citations to the transcript are either unhelpful or cumulative to the arguments he advances in his initial motion.

[2] The Court granted Petitioner and the Government a series of unopposed filing extensions, resulting in this matter being fully briefed as of April 15, 2021. *See* ECF Nos. 2, 12, 15, 17.

omission inconsistent with the rudimentary demands of fair procedure.'" *Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003) (quoting *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989)); *see also United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979). When considering a motion to vacate a defendant's sentence, "[t]he district court is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005) (quoting *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)).

For the reasons explained below, Petitioner's claims are without merit, and the record establishes that he is not entitled to relief as a matter of law. An evidentiary hearing is therefore not required.

## B. Petitioner Timely Filed His 28 U.S.C. § 2255 Motion With the Appropriate Court

As an initial matter, it is undisputed that Petitioner's motion is both properly before this Court, having been the Court to impose Petitioner's sentence, and timely filed, having been filed on August 6, 2020, within one year of the date on which Defendant's judgment of conviction became final following the Third Circuit's decision on his second appeal. *See* 28 U.S.C. §§ 2255(a), (f); *see also* July 1, 2020 Order, ECF No. 210, Crim No. 2:14-484-WJM-2 (Ordering Petitioner to file his Section 2255 motion by the statutory deadline of August 14, 2020, and denying an extension of that deadline).

## C. Petitioner Has Not Demonstrated That Defense Counsel Was Ineffective

The Court now turns to the merits of Petitioner's ineffective assistance of counsel claims. As stated above, Petitioner alleges that defense counsel: (1) failed to object, on the grounds of hearsay, to the admission into evidence of a notebook seized during a search of Petitioner's home; and (2) failed to call at trial John O'Donnell, Esq., a purportedly material witness who served as the escrow agent for some of Petitioner's and Mancuso's victims. Pet. at 1-2, ECF No. 1-1.

To show ineffective assistance of counsel, Petitioner must satisfy the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, Petitioner must show that defense counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. "In making this determination, *Strickland* cautioned that courts should be 'highly deferential' when assessing counsel's performance and requires courts to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 689); *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The question is whether an attorney's representation amounted

4

to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."); *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998) ("The test is not whether another lawyer, with the benefit of hindsight, would have acted differently, but whether 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment.'").

Under the second prong, Petitioner must show he was prejudiced by defense counsel's deficient performance, such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding[,]" but rather, "[c]ounsel's errors must be so serious as to deprive the defendant of a fair trial . . . ." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687, 693) (internal quotation marks omitted).

### 1. The Notebook

During the Government's case-in-chief, it called Special Agent Karl E. Ubellacker to testify about certain notes and records obtained from Petitioner's home pursuant to a search warrant that coincided with Petitioner's arrest. Gov't Ex. F, Trial Tr. 57:17-63:20, ECF No. 13-2. One of the records recovered from Petitioner's home office was a notebook containing various handwritten notes. *Id.* 62:1-63:19, 70:1-71:25; Gov't Ex. Q, ECF No. 13-4. The Government introduced into evidence five pages of those handwritten notes that revealed, among other things, the names of Petitioner's and Mancuso's victims, numeric figures corresponding to amounts the victims had invested in the schemes, and the initials "PVS" (Petitioner's initials) and "PM" (Mancuso's initials). Gov't Ex. F, Trial Tr. 62:1-63:19, ECF No. 13-2; Ex. Q, ECF No. 13-4. Defense counsel raised no objection to the notebook's admission into evidence. Gov't Ex. F, Trial Tr. 62:1-62:20, ECF No. 13-2. On cross-examination of Special Agent Ubellacker, defense counsel established there was no indication on the notebook itself as to whom it belonged, nor any indication as to whose handwriting appeared on the pages. *Id.* 63:22-69:24. The Government then referenced the notebook pages and the information they contained in its rebuttal summation, remarking:

> [W]hat the FBI found secreted in the basement in his office where he thought no one would find it, is his ledger. And that documents the fact that the Persicos invested and as well as Mezzancellos. . . . It says they invested in Matawan 25,000; a hundred thousand in Giants; 75 in Yankees; a hundred thousand in Bieber. That's in his own handwriting, and that's proof positive that he knew all along these weren't loans.

Gov't Ex. G, Trial Tr. 170:5-170:12, ECF No. 13-2.

Petitioner argues that defense counsel's failure to object to the notebook as hearsay and as an unauthenticated writing constitutes an egregious error warranting the vacation of his conviction. Pet. at 2-4, ECF No. 1-1. The Court finds this argument unavailing.

"Before an item of evidence is admissible at trial, its proponent must authenticate it by producing 'evidence sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Bereznak*, --- Fed. App'x ----, 2021 WL 2822183, at *2, (3d Cir. July 7, 2021) (quoting Fed. R. Evid. 901(a)). "This burden is 'slight' and does not 'require conclusive proof of a document's authenticity, but merely a prima facie showing of some competent evidence to support authentication.'" *Id.* (quoting *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013)). It is then left to the jury to ultimately determine the authenticity of the evidence presented. *Id.*

Here, the Government met its "slight burden" and laid the foundation for the notebook's authenticity through Special Agent Ubellacker's testimony that the notebook had been lawfully seized from Petitioner's private residence pursuant to a search warrant and had been found with other documents and records in Petitioner's home office area. In considering this testimony, defense counsel determined "it would be impossible to argue successfully that there was not at least a legitimate inference that the Government could draw that the 'notebook' belonged to [Petitioner] and thus likely contained [Petitioner's] notes." Klingeman Decl. ¶ 11, Gov't Ex. K, ECF No. 13-4

Defense counsel also determined that the notebook "was certain to be admitted into evidence," notwithstanding a hearsay objection. *Id.* ¶ 10. For instance, the notebook would have very likely been admitted as an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(A)). *See, e.g.*, *United States v. McGlory*, 968 F.2d 309, 335 n. 17 (3d Cir.1992) ("If the evidence establishes that [defendant] is the author of the exhibits"—in this case, handwritten notes seized from a defendant's trash—"they are admissible against him as admissions by a party opponent under Rule 801(d)(2)(A) . . . ."); *United States v. Jose*, Nos. 14-652-6, 14-652-10, 2016 WL 4650617, at *10 (E.D. Pa. Sept. 7, 2016) (concluding that a detailed ledger of heroin sales lawfully seized from the defendant's bedroom dresser during the search of his residence was admissible as an admission by a party opponent under Rule 801(d)(2)(A)).

Having determined that the notebook was very likely to be admitted, and that an objection would have only "highlight[ed] the probative value of the evidence and sen[t] a message to the judge and jury that the defendant is concerned about the incriminating nature of the evidence," defense counsel made the strategic decision not to object to its admission, but to instead cross-examine Special Agent Ubellacker to elicit testimony that would undermine any probative value of the notebook or inference that the notebook was indeed Petitioner's. Gov't Ex. F, Trial Tr. 63:22-69:24, ECF No. 13-2; Klingeman Decl. ¶¶ 10-12, Gov't Ex. K, ECF No. 13-4. The record therefore reflects only appropriate and

strategic advocacy on the part of defense counsel.  There is simply no basis on which the Court can conclude that defense counsel's performance was objectively unreasonable.

Even if the Court could conclude as much, Petitioner's argument that the outcome of trial was prejudiced by the Government's statements about the notebook in its rebuttal summation is an argument that has already been presented to and rejected by the Third Circuit.  Pet. at 8-10, ECF No. 1-1.  "A section 2255 petition is not a substitute for an appeal, nor may it be used to relitigate matters decided adversely on appeal."  *Gov't of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (internal citations omitted).  Ruling on Petitioner's first appeal, the Third Circuit stated:

> The government concedes that the prosecutor's remarks were in error but argues that the error did not cause any prejudice.  We agree.  First, any prejudicial effect was likely cured, either by the defense's rebuttal summation, or by the Court's jury instructions.  During its rebuttal statement, Stiso's counsel pointed out the obvious flaw in the government's argument, reminding the jury that "[w]e don't have any proof" that the notebook was in Stiso's handwriting.  Additionally, the jury was reminded, both before and after closing statements, that the lawyers' statements during closing arguments were not evidence and that they were only to consider the evidence presented during the trial.  Given the state of this record, that instruction renders the prosecutor's misstep harmless.  The question of whose handwriting is in the notebook was relatively insignificant, especially in light of the strong evidence supporting Stiso's conviction.

*Stiso*, 708 F. App'x at 759 (internal citations omitted).

Accordingly, Petitioner does not and cannot satisfy *Strickland*'s two-pronged test on his first ineffective assistance of counsel claim.  This claim must therefore be dismissed.

## 2.    The Purportedly Material Witness

Petitioner next argues that defense counsel rendered ineffective assistance by failing to call attorney John O'Donnell, Esq. ("O'Donnell") to testify at trial as a purportedly material witness for the defense.  Pet. at 10-19, ECF No. 1-1.  O'Donnell previously represented Mancuso on certain real estate transactions and served as the escrow agent whose attorney trust account was used to receive and disburse funds belonging to some (but not all) of Petitioner's and Mancuso's victims—notably, Ira Saferstein and Robert and Richard Persico.[3]  *Id.* at 13; Gov't Br. at 27-28, ECF No. 13.  The crux of Petitioner's

---

[3] O'Donnell, himself, also loaned Mancuso $180,000 from 2008 or 2009 to 2009 or 2010 to help Mancuso finance his family restaurant.  Attach. 6 at 3 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4.  Although Mancuso signed a promissory note, he never paid O'Donnell back.  *Id.*

argument is that had O'Donnell testified about his legal duties as an escrow agent, the services he provided for each client, and the financial transactions involving Mancuso, his testimony would have shown that Petitioner, as a recipient of funds disbursed from O'Donnell's attorney trust account, could not have possibly known who had deposited the funds with O'Donnell and whether the funds were anything other than lawful transactions. Pet. at 15-18, ECF No. 1-1. The Court finds this argument, too, unavailing.

The record reflects that defense counsel made a reasonable and deliberate strategic decision not to call O'Donnell at trial. By way of background, the Government conducted several interviews with O'Donnell in August and September of 2015 in the course of its investigation into Mancuso. *See* Attach. 6, 7, 8 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4. Simultaneously, defense counsel was working with a private investigator to contact O'Donnell, as it was not initially clear at that stage whether he was a co-conspirator, a defense witness, or a government witness. Klingeman Decl. ¶¶ 10-12, Gov't Ex. K, ECF No. 13-4; Cerimele Decl. ¶¶ 11-12, Gov't Ex. L, ECF No. 13-4; Attach. 2, 3 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4. Emails between defense counsel and the private investigator show that despite making phone calls to O'Donnell, the private investigator was ultimately unable to reach him. Cerimele Decl. ¶ 12, Gov't Ex. L, ECF No. 13-4; Attach. 4 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4.

Shortly thereafter, defense counsel received the Government's witness list identifying O'Donnell as a government witness, along with the investigative reports memorializing the Government's interviews with him. Klingeman Decl. ¶ 16, Gov't Ex. K, ECF No. 13-4; Cerimele Decl. ¶ 13, Gov't Ex. L, ECF No. 13-4; Attach. 5, 6, 7, 8 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4. The reports reveal that O'Donnell was unable to answer basic questions as to why certain funds flowed through his attorney trust account or why he was asked to disburse portions of those funds to Petitioner, among other individuals and entities. Gov't Br. at 31, ECF No. 13; *see* Attach. 7 at 3-4 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4; Attach 8 at 2 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4. Based on these reports, the fact that the Government had identified O'Donnell as a witness in its case-in-chief, and the private investigator's unsuccessful attempts to contact O'Donnell, defense counsel concluded that O'Donnell would be neither a cooperative, friendly, or helpful defense witness, and that his testimony was "just as likely, if not more likely, to be detrimental to [Petitioner's] defense as it was to support or benefit his defense." Klingeman Decl. ¶ 16, Gov't Ex. K, ECF No. 13-4; Cerimele Decl. ¶¶ 13-14, Gov't Ex. L, ECF No. 13-4. Defense counsel maintains that O'Donnell's personal feelings toward Petitioner were also unpredictable and "presented significant risks," as O'Donnell had purportedly been recorded on the Government's wiretap indicating he believed Mancuso was a "con artist" and referring to Petitioner as an "a\*\*hole." Cerimele Decl. ¶ 14, Gov't Ex. L, ECF No. 13-4; *see also* Pet'r Ex. H at 6, ECF No. 1-2. Consequently, instead of preparing to call O'Donnell as a witness for the defense, defense counsel prepared to cross-examine him and shared the witness outline with Petitioner. Pet'r Exs. G, H, ECF No. 1-

2; Cerimele Decl. ¶ 14, Gov't Ex. L, ECF No. 13-4. At trial, the Government ultimately did not call O'Donnell to testify.

Based on the above, there again is no basis on which the Court can conclude that defense counsel's performance was objectively unreasonable or anything but strategic advocacy. Even if the Court could conclude as much, Petitioner has failed to demonstrate how O'Donnell's testimony would have fundamentally altered the outcome of his trial.

For instance, Petitioner argues that O'Donnell could have testified that anyone receiving funds from his attorney trust account would have no knowledge about who deposited the funds with O'Donnell and that the funds were for a fraudulent ticket scheme. Pet. at 15, 18, ECF No. 1-1. But, as the Government correctly argues, this argument is superficial and focuses on the transactions in a vacuum while ignoring entirely all of the other testimony and evidence, including wiretap recordings of Petitioner, demonstrating his knowing participation in the schemes. Gov't Br. at 33, ECF No. 13. Further, the jury was already presented with and had the opportunity to consider testimony from both the Government's forensic accountant and victim Ira Saferstein that the records of the wire transfers alone, without more, did not reveal why Petitioner received the victims' funds or whether the funds were the product of fraud. Gov't Br. at 34-35, ECF No. 13; Gov't Ex. B, Trial Tr. 40:1-47:23; Gov't Ex. E, Trial Tr. 49:9-51:18; 52:3-53:11.

Petitioner also argues that "O'Donnell's value as a material witness would have been to identify for the jury" the fact that victim Robert Persico's $60,000 ticket investment was placed into the same escrow account that O'Donnell used for funds related to the legitimate Mamaroneck Avenue real estate transaction. Pet. at 18, ECF No. 1-1. According to Petitioner, the $39,000 of those funds disbursed to Petitioner must therefore also be legitimate earnings. *Id.* at 19. The fact that the $60,000 was placed into the same escrow account as a legitimate real estate transaction was never in dispute, though, and Petitioner's argument does nothing to refute the testimony by witness Richard Mach, Chief Financial Officer for Robert and Richard Persico's company, that the $60,000 was indeed designated for investment in the ticket scheme. Gov't Br. at 35-36, ECF No. 13; Gov't Ex. E, Trial Tr. 66:4-69:15, ECF No. 13-2. In fact, when the Government asked O'Donnell about this transaction during his September 2015 interview, "O'Donnell was uncertain as to why the [Persicos] deposited the $60,000 into his attorney trust account" and "was further uncertain as to why he was asked to disburse the funds in various ways." Attach. 7 at 2-3 to Cerimele Decl., Gov't Ex. L, ECF No. 13-4

Finally, Petitioner argues that defense counsel should have called O'Donnell to testify about an alleged "conflict of interest" arising from his representation of both Paul Mancuso and the Persicos on a certain real estate transaction, as such testimony was "vital" to evaluating witness Richard Mach's testimony. Pet. at 15-16, ECF No. 1. At trial, defense counsel addressed this alleged conflict on cross-examination of Richard Mach.

Gov't Ex. E, Trial Tr. 107:18-108:11, ECF No. 13-2.  It is not clear how further testimony by O'Donnell on this subject could have changed the outcome of the jury verdict.

Accordingly, just as with his first ineffective assistance of counsel claim, Petitioner does not and cannot satisfy *Strickland*'s two-pronged test on his second ineffective assistance of counsel claim.  His second claim must therefore also be dismissed.

### D.  A Certificate of Appealability Shall Not Issue

A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  As Plaintiff has not made that showing here, the Court declines to issue a certificate of appealability.

### III.   CONCLUSION

For the reasons stated above, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and no certificate of appealability shall issue.  An appropriate Order shall follow.

WILLIAM J. MARTINI, U.S.D.J.

**Date:  July 29, 2021**